UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| JOHN MCCRAY | CIVIL ACTION NO. 23-0820 |
| | SECTION P |
| VS. | |
| | JUDGE TERRY A. DOUGHTY |
| ALLAN CUPP | MAG. JUDGE KAYLA D. MCCLUSKY |

### REPORT AND RECOMMENDATION

Plaintiff John McCray, a prisoner at Richland Parish Detention Center proceeding pro se and in forma pauperis, filed this proceeding on approximately June 9, 2023, under 42 U.S.C. § 1983. He names Warden Allan Cupp as defendant.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff claims that "prisoners are being placed with the same ones after a fight or stabbing. [sic]." [doc. # 1, p. 4]. He adds, "No protective custody for inmates." *Id.* In an amended pleading, he claims that he was "deprived of protective custody" after he requested it several times. [doc. # 10, p. 1]. He "witnessed numerous knife fights with the same inmates placed back around each other with further altercations. [sic]." *Id.*

Next, Plaintiff claims that his "living quarters" are unsanitary. [doc. # 1, p. 4]. There is black mold on shower walls, and he suggests that there was or is feces and urine on a shower floor. [doc. # 10, p. 1]. He also alleges that he drank water from a water fountain which was

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

toxic because it was brown and had a bad smell. *Id.* He experienced the allegedly unsafe shower and unsafe drinking water for six months. *Id.* He claims that Warden Cupp knew of a substantial risk of serious harm because he "filed an administrative remedy procedure to [Cupp] about these serious conditions[.]" *Id.* Cupp did not respond. *Id.* Plaintiff alleges that Cupp "never called professional plumbers to correct" the dangerous conditions. *Id.*

Plaintiff maintains that "these conditions can cause skin cancer, respiratory problems, liver problems," Non-Hodgkin Lymphoma, hepatitis, tuberculosis, and "MRSA." *Id.* Plaintiff seeks monetary relief for stomach pain, nose bleeds, unspecified respiratory problems, and skin irritation. *Id.*

Plaintiff states that he does not "wish to be retaliated upon." [doc. # 1, p. 5]. He seeks a transfer "to a D.O.C. facility," $1,000,000.00 in compensation, to enjoin defendant to hire professional plumbers to fix "these unsafe conditions[,]" and to enjoin defendant to hire more security to protect inmates from violence in dormitories. [doc. #s 1, p. 5; 10, p. 2].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b)

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the

same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Failure to Protect**

As above, Plaintiff claims that "prisoners are being placed with the same ones after a fight or stabbing. [sic]." [doc. # 1, p. 4]. He "witnessed numerous knife fights with the same inmates placed back around each other with further altercations. [sic]." [doc. # 10, p. 1]. He claims that he was "deprived of protective custody" after he requested it several times. [doc. # 10, p. 1].

4

To state a failure-to-protect claim, a plaintiff must allege that a defendant's actions or inaction amounted to deliberate indifference. That is, the plaintiff must allege that a defendant "knew of and disregarded a substantial risk of serious harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).

Here, alleging that he was "deprived of protective custody," Plaintiff essentially and conclusorily claims that defendant failed to protect him. He simply rephrases the moniker, 'failure to protect,' to 'failure to provide protective custody.' As above, a pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.

Plaintiff does suggest that he fears an attack because there were numerous knife fights at the facility. However, while Plaintiff may describe a general risk of harm, he does not describe a substantial risk of serious harm to him. Nor does he plausibly allege that defendant knew of, and disregarded, a substantial risk of serious harm. He does not allege, for instance, when defendant had knowledge of a substantial risk of serious harm, how defendant had such knowledge, or how defendant disregarded such a risk.[3] *See Williams v. Martin*, 570 F. App'x 361, 365 (5th Cir. 2014) (finding that the plaintiff did not state a claim because he "alleged only that defendants failed to curb abuse of prisoners" and did not allege that "prison officials acted with deliberate indifference to [his] safety."); *Silva v. Moses*, 542 F. App'x 308, 311 (5th Cir. 2013) ("the vague contention by Silva that, although the defendants knew of previous violent incidents, they

---

[3] The undersigned is sympathetic to Plaintiff's plight and, as the court stated in *Brown v. Harris Cty., Texas*, 409 F. App'x 728, 731 (5th Cir. 2010), the undersigned does not "suggest that jail officials have no duty to protect the inmates in their custody from assault by other inmates." "But maintaining safe and orderly prison is a difficult task, and even the most vigilant oversight may not be able to prevent every incident." *Id.*

5

declined to take unspecified protective measures to prevent future attacks such as the one on him, does not show that any risk to Silva was clear to the officers.").

To the extent Plaintiff claims that he is entitled to protective custody, a prisoner "has no constitutional right to a particular classification." *Mozee v. Crowley*, 188 F. App'x 241, 242 (5th Cir. 2006). In *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995), the plaintiff argued that "prison officials wrongly denied his requests to be reclassified for protective custody, safekeeping status, or for a unit transfer, all in disregard of his safety." The court held that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation." *Id.*; *see Zamora v. Stephens*, 732 F. App'x 305, 307 (5th Cir. 2018).

The Court should dismiss these claims.

### 3. Conditions of Confinement

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of the "minimal civilized measure of life's necessities."[4] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish

---

[4] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving

deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[5] However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

Here, Plaintiff initially alleged only that his "living quarters" are or were unsanitary. [doc. # 1, p. 4]. In an amended pleading, he alleges verbatim: "I was subjected to black mold on shower walls and floor also feces with urine. I was at risk as well by drinking toxic water that comes out of the water fountain the color of brown with a bad smell. [sic]." [doc. # 10, p. 1].

"[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998). Nor does it "require that prisons be completely sanitized or as clean or free from potential hazards as one's

---

standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

[5] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

home might be." *McAllister v. Strain*, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009). Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982). Jails must only provide reasonably adequate sanitation. *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986). "[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989).

Here, the alleged unsanitary conditions, while unpleasant, do not amount to a constitutional violation. *Compare Harper v. Showers*, 174 F.3d 716, 716 (5th Cir. 1999) (finding a nonfrivolous claim where the plaintiff alleged, *inter alia*, "continual" conditions of "filthy, sometimes feces-smeared cells"), *and Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (finding that "extremely filthy" cells with "crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls . . . would present a substantial risk of serious harm . . . ."), *with Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998) (holding that confinement for three days in a cell with "blood on the walls and excretion on the floors and bread loaf on the floor" did not state a claim).[6]

Plaintiff suggests that there is or was mold, feces, and urine on "shower walls and floor [sic][,]" but he does not allege how extensive it is, how often he was "subjected" to the conditions over the past six months, whether he can avoid the conditions or clean them, or whether he continues to experience the conditions (he alleges that he "*was*" subjected to the

---

[6] *See also Taylor v. Riojas*, 141 S. Ct. 52 (2020) (conditions of confinement alleged by inmate, where for six full days he was confined in a pair of shockingly unsanitary cells, the first of which was covered nearly floor to ceiling in "massive amounts" of feces and the second of which was frigidly cold and equipped with only a clogged floor drain to dispose of bodily wastes, violated the Eighth Amendment).

conditions). *Cf. Hope v. Harris*, 861 F. App'x 571, 584 (5th Cir. 2021), *cert. denied,* 143 S. Ct. 1746 (2023) (finding an Eighth Amendment claim where for two weeks the plaintiff was exposed to mold on the floor and doors and a wall "completely covered in black mold," causing him to cough, and he was "never given cleaning supplies"; in addition, for twenty-six years he was exposed "many times" to urine and feces on a wall). The combined unsanitary/unhygienic conditions here, under Plaintiff's thin description, do not reflect an extreme deprivation of a minimal civilized measure of life's necessities.[7]

Plaintiff also claims, "I was at risk as well by drinking toxic water that comes out of the water fountain the color of brown with a bad smell." [doc. # 10, p. 1]. Again, however, Plaintiff does not describe a sufficiently serious deprivation of safe drinking water. He does not, for example, explain how often he must use the water fountain or whether he could obtain safe drinking water from another source.[8] While Plaintiff describes a risk of harm, he does not

---

[7] *See Bustinza v. Lucio*, 2023 WL 3019690, at *2 (5th Cir. Apr. 20, 2023) (finding, where the plaintiff alleged that one of three toilets of his cell block was broken for approximately one week and dripped human waste onto the floor, that the plaintiff did not allege a sufficiently serious deprivation).

[8] *See generally Jelinek v. Roth*, 33 F.3d 56 (7th Cir. 1994) ("First, Jelinek complains that the plumbing in his cell produced only water contaminated with rust that was undrinkable and unsuitable for bathing. This allegation does not implicate the Eighth Amendment. Jelinek does not allege that he was refused drinking water or prevented from bathing."); *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) ("Poisoning the prison water supply . . . would be [a form] of cruel and unusual punishment, . . . But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not. Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans.") (citations omitted); *Riley El v. Godinez*, 2016 WL 4505038, at *9 (N.D. Ill. Aug. 29, 2016) ("[E]ven if Plaintiff could establish that tap water at Stateville is brown and foul smelling, he does not indicate he was deprived of drinking water."); *Davis v. Watson*, 2018 WL 1722167, at *5 (W.D. Ark. Apr. 9, 2018) ("Plaintiff does not allege that he was denied water altogether; he only alleges that the broken sink in his cell did not provide him drinkable water. Therefore, Plaintiff fails to state a cognizable claim regarding this allegation.").

plausibly allege a *substantial* risk of serious harm.

The Court should dismiss these claims.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff John McCray's claims be **DISMISSED WITH PREJUDICE** for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 5th day of September, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge